IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.　　　　　　　　　　　　　　　　　　CRIMINAL ACTION NO.   3:19-00246-01

GEORGE DEVONTE LANGFORD
　　　also known as "J.P." and "Mike"

**MEMORANDUM OPINION AND ORDER**

On June 16, 2020, the Court held a hearing on Defendant George Devonte Langford's Amended Motion to Suppress Recordings of Phone Calls. ECF No. 238. After considering the arguments of the parties, the Court denied the motion. The Court now memorializes that decision.

In his motion, Defendant argues that the Court should suppress and exclude the evidence obtained from the text message and audio recordings of phone calls made pursuant to an Order authorizing their interception. Specifically, Defendant claims that the evidence should be suppressed for two reasons. First, he argues the Affidavit in support of the Application for Interception of Wire and Electronic Communications (ECF No. 239-1) fails to establish probable cause to support the warrant. Second, he asserts there were other reasonable alternatives to a wiretap that officers could have used. The Court rejects both arguments.

Defendant Langford and four other defendants are charged in a third superseding indictment with several drug and firearm offenses, including conspiracy.[1] *Third Superseding Indictment,* ECF No. 263. In gathering evidence of the conspiracy and related crimes, officers used an authorized wiretap to monitor and record the communications and activity over several different telephones. In his motion, Defendant Langford argues that the Affidavit in support of the Application for the intercept Order was insufficient.

In the Affidavit, FBI Special Agent Antonio Ortega alleges that Defendant Langford is a methamphetamine dealer who supplied drugs to another drug dealer, Melanie Curnutte. *Aff. in Supp. of an Application for Interception of Wire and Electronic Communications*, at 16. While monitoring the telephone affiliated with Ms. Curnutte (Telephone #3), communications were intercepted with Telephone #6, in which arrangements were made for a drug deal. Telephone #6 is alleged to be affiliated with Defendant Langford. Additionally, a cooperating witness (CW-2) identified Defendant Langford as a kilogram level methamphetamine distributer. *Id*. at 16-17. After having CW-2 look at a Facebook photo, Defendant Langford was identified as "JP," an individual with prior arrests and convictions for crimes that include drug and firearm offenses. *Id*. at 17.

In all, there were one text message and four telephone calls intercepted and quoted in the Affidavit between Telephone #3 and Telephone #6. The text message was sent on June 15, 2019 from Telephone #6 to Telephone #3 and read "What's up you good[.]" *Id*. at 64. Based on

---

[1] Defendant also is charged with Attempting to Obstruct, Influence, and Impede an Official Proceeding in violation of 18 U.S.C. § 1512(c)(2).

Agent Ortega's training and experience and his knowledge of the investigation, he interpreted the text message as Defendant Langford asking Ms. Curnutte "if she needs to be resupplied with methamphetamine or heroin." *Id*. A few hours later that same day, a call was intercepted from Telephone #6 to Telephone #3. *Id*. Agent Ortega states that, during this conversation, Defendant Langford and Ms. Curnutte are arranging to meet for a drug deal. *Id*. at 66.[2] Approximately one

---

[2]The recorded conversation was as follows:

| | |
|---|---|
| CURNUTTE: | Hello? |
| LANGFORD: | Hey what's up? |
| CURNUTTE: | Not much. Who is this? |
| LANGFORD: | It's JP. I been trying to get ahold of you since last night. |
| CURNUTTE: | Who is this? |
| LANGFORD: | JP. |
| CURNUTTE: | JP? |
| LANGFORD: | Huh. |
| CURNUTTE: | Alright. Now what were you sayin? |
| LANGFORD: | I was just sayin, I been tryin to get in touch with you since last night. Lettin you know I was down here (unintelligible) if you need it. |
| CURNUTTE: | Well my phone, one of my phones was stolen. And . . . |
| LANGFORD: | I don't even know if I got it. I only got this phone. |
| CURNUTTE: | This is the only one you've got? |
| LANGFORD: | Yeah. |

| | | |
|---|---|---|
| CURNUTTE: | | Cool. |
| LANGFORD: | | I don't know why you don't keep savin my number? I don't talked to you four times. You just, I don't know. |
| CURNUTTE: | | I do save it. But then for some reason it won't stay in my phone. I don't know why. But, anyway, um, what can I do for you? |
| LANGFORD: | | I was just seeing what I could do for you. |
| CURNUTTE: | | That's what I need to know real bad, real bad. |
| LANGFORD: | | I was telling you I'm around (unintelligible). |
| CURNUTTE: | | You're doing good, and you're down here? |
| LANGFORD: | | Yep. |
| CURNUTTE: | | Alright, are you close? Do I call and meet you? |
| LANGFORD: | | Yeah (unintelligible). |
| CURNUTTE: | | Right now nothing. I just woke up about an hour ago, but I will be getting with you soon. I need somebody with it that was close. |
| LANGFORD: | | Yeah, I'm close. As soon you ready, you can pull right up and (unintelligible) can grab the money. |
| CURNUTTE: | | Alright give me a minute and I will be back with you. |
| LANGFORD: | | Ok. |
| CURNUTTE: | | Thanks. |

*Id.* at 64-66.

and one-half hour later, there is a second call in which Agent Ortega asserts that Defendant Langford and Ms. Curnutte discuss where they are going to meet, and Ms. Curnutte specifically states "I also need you to give me 200 dollars worth of slow." *Id*. at 67. According to Agent Ortega, the term "slow" refers to heroin, and the conversation entails the arrangements for Ms. Curnutte to be resupplied with heroin and methamphetamine by Defendant Langford. *Id.* at 67-68.[3] The

---

[3] The following was said during this conversation:

| | |
|---|---|
| CURNUTTE: | Hello. |
| LANGFORD: | Hey I got a ride. You still need? |
| CURNUTTE: | Yeah, I got a ride too hun. |
| LANGFORD: | Meet me by Sissonville. |
| CURNUTTE: | In Sissonville? |
| LANGFORD: | Patrick Sissonville. |
| CURNUTTE: | Just give me an address so I have something to put in Google. |
| LANGFORD: | You know the Marathon as you get off Kenna exit? That Marathon right there. |
| CURNUTTE: | Marathon, off Kenna exit, yeah. |
| LANGFORD: | Yeah, right there. |
| CURNUTTE: | I also need you to give me 200 dollars worth of slow. |
| LANGFORD: | Okay I got you come on. |
| CURNUTTE: | You got that too? |
| LANGFORD: | Yeah. |
| CURNUTTE: | That's perfect. That's everything she needs. Um, I'll call you as soon as we are ready to |

fourth phone call was made the next day from Telephone #6 to Telephone #3. Agent Ortega states that, during the call, Defendant Lanford tells Ms. Curnutte he is still available to sell her drugs, but Ms. Curnutte says her sales are "not real hot right now." *Id*. at 68-69.[4]

---

|  |  |
|---|---|
|  | leave here. That way you will know when we're leaving and I don't know how long it takes to get to Kenna Marathon. |
| LANGFORD: | Ok. |
| CURNUTTE: | Probably 15 minutes. I don't know I will call you as soon as I walk out the door. |
| LANGFORD: | Ok. |
| CURNUTTE: | Alright honey thank you. |

*Id*. at 66-67.

[4]During this conversation, the following was said:

| CURNUTTE: | Hello. |
|---|---|
| LANGFORD: | Hey what's up? |
| CURNUTTE: | Hey, not much, just getting started. |
| LANGFORD: | Oh, you getting started? |
| CURNUTTE: | Uh huh. |
|  | (Talking over each other – unintelligible) |
| CURNUTTE: | Huh, not real hot right now. Hopefully that changes real quick. Uh (unintelligible) . . . |
| LANGFORD: | I'm, I'm in Sissonville, so if you need me, call me. |
| CURNUTTE: | You are in Sissonville? |
| LANGFORD: | Yeah, Eden's Fork. |

Defendant argues that the text message and these conversations do not establish probable cause for the warrant to intercept Telephone #6. The Court disagrees. The probable cause requirement for a wiretap is found in 18 U.S.C. § 2518(3) and provides, in relevant part:

> (3) Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting . . . , if the judge determines on the basis of the facts submitted by the applicant that—
>
> > (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;
> >
> > (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;
> >
> > (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

---

| | |
|---|---|
| CURNUTTE: | If you leave to go somewhere major, please let me know. |
| LANGFORD: | Alright, I'm in Eden's Fork so I'm close, just call me. |
| CURNUTTE: | Alright, hun. |
| LANGFORD: | Alright. |
| CURNUTTE: | Alright. |

*Id*. at 68-69.

> (d) . . . there is probable cause for belief that the facilities from which, . . . the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, . . . .

18 U.S.C. § 2518(3), in part. "The probable cause required for issuance of a wiretap order is the same as that which is necessary to obtain the issuance of a search warrant." *United States v. Talbert*, 706 F.2d 464, 467 (4th Cir. 1983) (citations omitted). In order to establish probable cause, an applicant need not "prove beyond a reasonable doubt that communications concerning the offense will be obtained [through the wiretap], but only that there is a fair probability thereof." *United States v. Depew*, 932 F.2d 324, 327 (4th Cir. 1991) (citation omitted). The ultimate determination is whether the Court has "a substantial basis for concluding that electronic surveillance would uncover evidence of wrongdoing." *Id*. (citation omitted).

In this case, the Court finds that this standard and the requirements for probable cause set forth in subparagraphs (a), (b), and (d) of § 2518(3) are easily met by the information contained in the Affidavit. Although the text message might be viewed as somewhat innocuous by itself, the totality of these conversations clearly establish a probable cause bases to issue a warrant.[5] Not only are these conversations indicative of drug transactions, Ms. Curnutte specifically says in the third conversation that she "*also* need[s] . . . 200 dollars worth of slow," and the person on Telephone #6 (reportedly Langford) replies that he has it to give her. *Id*. at 67 (italics added). The Court is aware that the word "slow" is common parlance for heroin, and it is clear Ms. Curnutte is asking for $200 worth of heroin in addition to whatever else she is getting. Although Defendant

---

[5]As additional support for probable cause, the Affidavit contains other evidence indicating Ms. Curnette was actively involved in drug transactions with other individuals, which bolsters Agent Ortega's understanding and synopsis of her conversations with Defendant Langford.

Langford argues $200 worth of heroin is not major distribution quantity, it does not have to be a major distribution amount to support probable cause. Thus, the Court rejects Defendant Langford's argument that the Affidavit contains insufficient information to support the warrant.

Defendant Langford further argues, however, that the Affidavit fails to meet the criteria in subparaph (c). Specifically, Defendant Langford contends that the Affidavit fails to show that normal investigative procedures were tried and failed or were unlikely to succeed. Instead, the Affidavit contains mere boilerplate language that is insufficient to support the warrant. Again, the Court disagrees.

In the Affidavit, Agent Ortega explains that in April 2019 officers developed a cooperating witness (CW-1), who provided information about others involved in drug trafficking, including Ms. Curnutte. *Affidavit*, at 21-23. CW-1 said Ms. Curnutte was receiving large amounts of methamphetamine from another individual on a weekly basis. *Id*. at 23. However, although the information supplied by CW-1 proved to be reliable and was corroborated, and he/she made some controlled buys, CW-1 continued to use methamphetamine and engage in criminal activity. Therefore, CW-1 was deactivated, and the investigators did not intend to use him/her. *Id*. 22, 80.

Investigators also developed two other confidential sources, CW-2 and CW-3, but both were of limited value. *Id*. at 80-82. In particular, CW-2 only was able to purchase methamphetamine from one individual. *Id*. at 80-81. Also, despite CW-3 saying she could make controlled purchases from Defendant Langford, investigators had a difficult time getting in touch with her, she "missed several scheduled meetings," and she made no controlled purchases. *Id*. at

81. Additionally, Agent Ortega did not believe either CW-3 or CW-2 could "gain access to the organization's supplier's[.]" Id. at 82.

Similarly, although investigators were able to do physical surveillance on multiple occasions, Agent Ortega said investigators were "unable to identify any of the organizations sources of supply or locate additional residences utilized by the organization to store methamphetamine." *Id*. at 91. Without the use of electronic interception, it also proved difficult to determine the nature of meetings, identify and observe all persons involved, know in advance where illegal activity would occur, and it increased the risk of surveillance being detected. *Id*. In addition, the Affidavit detailed several other techniques that either were used with limited success or not used because of an unlikelihood of success.[6]

Upon review, the Court finds that the Affidavit meets the requirements of subparagraph (c) of § 2518(3). While the Government cannot meet its burden to show the necessity of a wiretap "with bare conclusory statements that normal techniques would be unproductive or mere boilerplate recitation of the difficulties of gathering usable evidence, it is not required to show that other methods have been wholly unsuccessful, or that it has exhausted all possible alternatives to wiretapping." *United States v. Smith*, 31 F.3d 1294, 1297–98 (4th Cir. 1994) (internal quotation marks, punctuation, and citations omitted). "Although wiretaps are disfavored tools of law enforcement, the Government need only present specific factual information sufficient

---

[6]The Affidavit discusses undercover agents, pole cameras, search warrants, arrest warrants, grand jury proceedings, pen register data, GPS tracking devices, trash inspection, criminal database checks, financial investigations, review of social media accounts, and prior Title III interceptions.

to establish that it has encountered difficulties in penetrating the criminal enterprise or in gathering evidence such that wiretapping becomes reasonable." *United States v. Wilson*, 484 F.3d 267, 281 (4th Cir. 2007) (internal quotation marks, punctuation, and citations omitted).

Here, Agent Ortega fully described the various investigative tools, some with limited success, some with no success, and some that increased the risk of detection. He also explained the necessity of the wiretap. Nevertheless, Defendant Langford maintains that electronic surveillance of Telephone #6 was unnecessary because CW-3 said she could make a controlled purchase from him irrespective of the wiretap. However, Agent Ortega sufficiently articulated why CW-3 proved to be unreliable and not useable. Moreover, even if CW-3 could make a controlled buy from Defendant Langford, investigators were under no obligation to stop their investigation at that point. Clearly, investigators were conducting a large investigation of multiple individuals transporting drugs from Ohio to West Virginia for distribution. It is clear that investigators were attempting to learn about the scope of the organization and identify larger suppliers. As such, investigators were not required to stop the investigation midstream merely because CW-3 said she could conduct a controlled buy from Defendant Langford. In fact, investigators had a difficult time even contacting CW-3, and Agent Ortega said CW-3 did not make a purchase. Thus, the Court rejects Defendant Langford's argument there were other reasonable alternatives to a wiretap that officers could have used.

Accordingly, for the reasons stated above and at the hearing, the Court finds that the information contained in the Affidavit was sufficient to meet the probable cause standard for the wiretap of Telephone #6. The Affidavit gives a detailed description of Ms. Curnutte's

involvement in the distribution of controlled substances and detailed her related communications with Telephone #6. As stated above, during these conversations Ms. Curnutte clearly requested heroin ("slow") in the third conversation in addition to the other drugs she was being provided. Furthermore, the Affidavit sufficiently explained the difficulty officers had with other means of investigation and the necessity of the warrant. Therefore, the Court **DENIES** Defendant Langford's motion.

The Court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: September 22, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE